Filed:  June 28, 2013

UNITED STATES COURT OF APPEALS
                       FOR THE FOURTH CIRCUIT

                            ─────────────

                            No. 12-1581
                         (1:10-cv-02701-JKB)

                            ─────────────

MINNESOTA LAWYERS MUTUAL INSURANCE COMPANY,

              Plaintiff - Appellee,

       v.

BAYLOR & JACKSON, PLLC; BRYNEE K. BAYLOR; DAWN R. JACKSON;
RICHARD THOMAS; HENRY THOMAS; FREEDOM NY INC.; TEKNIC CORP.;
T.F.T.F. CAPITAL CORP.; HT FOOD PRODUCTS; RSG GROUP &
ASSOCIATES INC.,

              Defendants - Appellants.

                            ─────────────

                             O R D E R

                            ─────────────


       The Court amends its opinion filed June 27, 2013, as

follows:

       On the cover sheet, opinion status section, line 2 --

the spelling of the word "wrote" is corrected.

                              For the Court – By Direction


                              /s/ Patricia S. Connor
                                       Clerk

**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 12-1581**

MINNESOTA LAWYERS MUTUAL INSURANCE COMPANY,

Plaintiff - Appellee,

v.

BAYLOR & JACKSON, PLLC; BRYNEE K. BAYLOR; DAWN R. JACKSON;
RICHARD THOMAS; HENRY THOMAS; FREEDOM NY INC.; TEKNIC CORP.;
T.F.T.F. CAPITAL CORP.; HT FOOD PRODUCTS; RSG GROUP &
ASSOCIATES INC.,

Defendants - Appellants.

Appeal from the United States District Court for the District of
Maryland, at Baltimore.   James K. Bredar, District Judge.
(1:10-cv-02701-JKB)

Argued:  March 19, 2013                    Decided:  June 27, 2013

Before DUNCAN, FLOYD, and THACKER, Circuit Judges.

Affirmed by unpublished opinion.   Judge Floyd wrote the majority
opinion, in which Judge Duncan joined.   Judge Thacker wrote a
dissenting opinion.

**ARGUED:** Joseph Michael Creed, JOSEPH, GREENWALD & LAAKE, PA,
Greenbelt, Maryland, for Appellants.   Paul Newman Farquharson,
SEMMES, BOWEN & SEMMES, Baltimore, Maryland, for Appellee.   **ON
BRIEF:** Cary J. Hansel, JOSEPH, GREENWALD & LAAKE, PA, Greenbelt,
Maryland, for Appellants.   Gregory L. Arbogast, SEMMES, BOWEN &
SEMMES, Baltimore, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

FLOYD, Circuit Judge:

Appellants are Baylor & Jackson, PLLC, a law firm in Washington, D.C., and its two principals, Brynee Baylor and Dawn Jackson (collectively, Baylor & Jackson). In 2006, Baylor & Jackson filed a response to a motion on behalf of its clients, Henry Thomas (Thomas) and Richard Thomas (collectively, the Underlying Defendants), owners and operators of several companies, averring that their adversary, William Robbins, was not entitled to summary judgment in a certain Maryland state-court case. Baylor & Jackson failed to provide documentation, as required by state procedural rules, to support its assertion that genuine issues of material fact prevented judgment as a matter of law, and the trial court ultimately granted judgment to Robbins.

In 2009, the Maryland Court of Appeals affirmed the trial court's grant of summary judgment, reiterating Baylor & Jackson's failure to properly support the opposition to the motion. Afraid that the Underlying Defendants would sue for malpractice, Baylor & Jackson notified its legal malpractice insurer, Appellee Minnesota Lawyers Mutual Insurance Company (MLM) of the possibility of a claim. Shortly thereafter, the Underlying Defendants filed the malpractice suit that Baylor & Jackson had feared, and in turn, MLM provided coverage. Within a year, however, MLM communicated to Baylor & Jackson that it

3

would no longer defend or indemnify it in the action because it allegedly had failed to provide timely notification of the possibility of a claim. Obviously, Baylor & Jackson disagreed with MLM's conclusion on this point, and the dispute we address here was born. Each party petitioned the district court for a declaratory judgment in its favor, and on cross-motions for summary judgment, the court ruled for MLM. For the reasons outlined below, we affirm.

I.

Four lawsuits are in play here: (1) the Underlying Defendants' litigation with the federal government for breach of contract, (2) Robbins's litigation with the Underlying Defendants also regarding, among other things, breach of contract, (3) the Underlying Defendants' litigation with Baylor & Jackson for legal malpractice, and (4) Baylor & Jackson's litigation with MLM for disclaiming coverage in the Underlying Defendants' malpractice action. Below, we provide the relevant facts from each suit.

A.

In 1999, the Underlying Defendants sued the federal government for breach of contract, and although they ultimately

4

prevailed, they did not do so without the financial assistance of Robbins, at that time a friend of Thomas.

Thomas and Robbins entered into several agreements related to the funding of the litigation: (1) On July 22, 1998, they agreed that Thomas would repay Robbins $75,000 for every $25,000 he supplied as personal expense money, provided the litigation was successful (3:1 Agreement); (2) on December 16, 1998, they agreed that Robbins would finance the cost of the litigation; (3) on November 11, 1999, they agreed that Robbins would pay the legal fees associated with litigating and/or settling the government claims and that, for doing so, he would receive one-sixth of the first $21 million obtained against the government (Cooperation Agreement); (4) on May 1, 2001, Robbins agreed that if Thomas provided an accounting that showed he had repaid all of the out-of-pocket expenses that Robbins had incurred, he would give Thomas a fifty-percent discount on Thomas's repayment of the attorneys' fees (Private Legal Side Agreement); and (5) on May 20, 2002, Thomas promised to pay Robbins a $600,000 consulting fee for his advice related to the litigation (May 2002 Contract).

Between December 16, 1998, and February 20, 2004, the legal fees associated with the litigation totaled almost $1 million. In February 2004, Thomas's accountant prepared a report showing the amount that Thomas owed Robbins. The report erroneously

deducted nearly $200,000 and failed to include the $600,000 consulting fee. Robbins objected to the figures and immediately retained counsel.

## B.

In 2005, Robbins sued the Underlying Defendants in Baltimore City Circuit Court, alleging breach of the Cooperation Agreement, entitlement to declaratory relief, breach of fiduciary duty, breach of the 3:1 Agreement, and breach of the May 2002 Contract. Baylor & Jackson entered the case in 2006. On July 27, 2006, Robbins moved for summary judgment on the following claims: (1) breach of the Cooperation Agreement, (2) breach of fiduciary duty, (3) breach of the 3:1 Agreement, and (4) breach of the May 2002 Contract. The Underlying Defendants filed their opposition to the motion, and Robbins replied. Following a motions hearing, on August 22, 2006, the Baltimore City Circuit Court granted summary judgment to Robbins. It awarded $1,844,913 for breach of the Cooperation Agreement, $199,995 for breach of the 3:1 Agreement, and $600,000 for breach of the May 2002 Contract. Regarding the fiduciary duty breach, it granted judgment to Robbins but awarded only attorneys' fees for his pursuit of the claim.

The import of Thomas's litigation with Robbins lies in some of the reasons that the circuit court granted summary judgment.

6

Obviously, the court concluded that no genuine issue of material fact precluded judgment as a matter of law. But it was able to arrive at that conclusion in part because Baylor & Jackson failed to adequately support the Underlying Defendants' opposition to Robbins's motion.

For example, attempting to demonstrate that an issue of material fact existed regarding the Cooperation Agreement, the Underlying Defendants claimed the Agreement was invalid because "it was not signed by the original designated Fund Manager." Robbins v. Thomas, No. 24-C-05-006855, slip op. at 6 (Balt. City Cir. Ct. Aug. 22, 2006). But the circuit court refused to credit this assertion, stating, "Since Thomas submitted neither an affidavit nor a sworn statement to support this contention, this Court finds no basis upon which to accept his argument." Id. Correspondence that MLM submitted to the district court in the present action provides additional details regarding the state court's response to Thomas's unsubstantiated allegation:

> Baylor & Jackson filed a timely opposition to the motion for summary judgment which argued, at least in part, that summary judgment could not be granted as a matter of law because genuine disputes of material fact existed. In an attempt to present those material facts to the court, Baylor & Jackson attached an affidavit from Mr. Thomas. However, the affidavit was unexecuted and had been attached in that form in error. At the hearing on August 17, 2006, the Honorable Joseph H.H. Kaplan refused to either allow Mr. Thomas to execute the affidavit or testify to the contents of the affidavit despite Mr. Thomas'[s] presence at the hearing.

7

Minn. Lawyers Mut. Ins. Co. v. Baylor & Jackson, PLLC, 852 F. Supp. 2d 647, 651 n.2 (D. Md. 2012) (quoting correspondence between counsel for MLM and Baylor & Jackson). And at the conclusion of its discussion of the Cooperation Agreement, the court again referred to the lack of support accompanying Thomas's opposition: "Although Thomas disputes various items in his Response, this Court cannot accept them as facts. Documents, affidavits, and sworn testimony in the record contradict the assertions made in Thomas's Response." Robbins, No. 24-C-05-006855, slip op. at 8.

On appeal, the Court of Special Appeals of Maryland affirmed the circuit court's grant of summary judgment in part and reversed and remanded in part. Thomas v. Robbins, No. 944, slip op. at 20-21 (Md. Ct. Spec. App. July 8, 2009) (unreported). Relevant here, the court observed that the Underlying Defendants' opposition to summary judgment "was not supported by affidavits, deposition testimony, interrogatory answers, or any sworn evidence as required by Maryland Rule 2-501," id. at 7, and that such failure "was a proper ground upon which the trial court could conclude that no dispute of material fact existed," id. at 11. Specifically addressing the trial court's grant of summary judgment as to Robbins's claims for

breach of fiduciary duty, breach of the 3:1 Agreement, and breach of the May 2002 Contract, the court stated:

> In granting summary judgment on Counts III [breach of fiduciary duty] and IV [breach of 3:1 Agreement] and the Consolidated Count [breach of May 2002 Contract], the trial court did not expressly restate its determination that appellants had failed to place disputed material facts before the court by way of sworn evidence. Normally, we "are confined to the basis relied upon by that court and may not otherwise explain its conclusion by introducing new legal theories." It is evident, however, that appellants' failure to comply with Maryland Rule 2-501 severely undermined their opposition to summary judgment on all the counts. Consequently, we shall conduct our analysis of whether appellee was entitled to judgment as a matter of law on the basis of the facts as alleged in appellee's motion for summary judgment.

Id. at 11-12 (footnote omitted) (citation omitted).

Ultimately, the court affirmed the trial court's judgment, with the exception of its award of attorneys' fees on the breach of fiduciary duty claim. As to that matter, it reversed and remanded the case for recalculation of the judgment.

### C.

The third suit involved a legal malpractice action that the Underlying Defendants instituted in 2009 against Baylor & Jackson for its failure to properly support the opposition to summary judgment in the Robbins action. As noted above, MLM initially covered Baylor & Jackson under the legal malpractice insurance policy that it had provided them, but later, it

9

reversed course. It was then that the fourth suit, and the one we address here, commenced.

The legal malpractice policy that MLM provided to Baylor & Jackson promised the following:

> WE will pay all sums up to the limit of OUR liability, which the INSURED may be legally obligated to pay as DAMAGES due to any CLAIM:
>
> (1)  arising out of any act, error or omission of the INSURED or a person for whose acts the INSURED is legally responsible; and
>
> (2)  resulting from the rendering or failing to render PROFESSIONAL SERVICES while engaged in the private practice of law or from rendering or failing to render PROFESSIONAL SERVICES as a PART TIME EMPLOYED ATTORNEY OF A GOVERNMENTAL BODY, SUBDIVISION OR AGENCY.

The policy also gave MLM "the exclusive right to investigate, negotiate and defend CLAIMS seeking DAMAGES against the INSURED." MLM first contracted with Baylor & Jackson in 2003. The policy had a term of one year, and Baylor & Jackson renewed yearly until 2010.

As noted above, the issue in this case is whether Baylor & Jackson provided timely notification to MLM of the possibility of a malpractice claim. Baylor & Jackson first contacted MLM on July 9, 2009, when it received the Court of Special Appeals' opinion. Thomas brought his malpractice claim on August 11, 2009. MLM contends that Baylor & Jackson should have contacted the insurance company in 2006, when the circuit court issued its

10

opinion.  It was then, MLM maintains, that Baylor & Jackson "first became aware of facts which could have reasonably supported the claim asserted against it by Mr. Thomas."

Upon notifying Baylor & Jackson that MLM would not represent it, MLM filed an action in the United States District Court for the District of Maryland, seeking a declaratory judgment that it had "no contractual obligation, under its insurance policy, to defend and/or indemnify Baylor & Jackson, Baylor, and/or Jackson . . . in the case of Thomas v. Baylor, Case No. 24-C-09-005000."  Baylor & Jackson counterclaimed, seeking a declaratory judgment that (1) "Baylor & Jackson provided timely notice to MLM of the possibility of a claim against it," (2) "MLM did not suffer any actual prejudice as a result of Baylor & Jackson's alleged delay in providing notice," (3) "MLM is estopped from denying coverage," and (4) "MLM is obligated to cover Baylor & Jackson's settlement with the Thomas Defendants in the amount of $850,000."  Both parties moved for summary judgment.  Reasoning that Baylor & Jackson failed to provide timely notice to MLM of the possibility a claim and that MLM did not need to show actual prejudice, the district court granted MLM's motion and denied Baylor & Jackson's motion.

11

II.

"We review the grant of summary judgment de novo, asking whether, viewing the facts in the light most favorable to [Baylor & Jackson], there is no genuine dispute as to any material fact and [MLM] is entitled to judgment as a matter of law." Lansdowne on the Potomac Homeowners Ass'n, Inc. v. OpenBand at Lansdowne, LLC., No. 12-1925, 2013 WL 1364274, *4 (4th Cir. Apr. 5, 2013). Because we sit in diversity in this case, we apply Maryland law. See 28 U.S.C. § 1652.

Baylor & Jackson assert that the district court erred in determining that MLM had no obligation to provide it coverage because (1) it timely reported the possibility of a claim to MLM and (2) even if it did not, MLM failed to show that it suffered actual prejudice as a result.


A.

The policy that MLM provided to Appellants includes the following stipulations regarding notice of claims:

A CLAIM is covered only if made during the POLICY PERIOD or extended reporting period and reported to US:

(1)  during the POLICY PERIOD;

(2)  within 60 days after the end of the POLICY PERIOD; or

(3)  during the extended reporting period.

12

The act, error or omission giving rise to the CLAIM must have occurred:

(1)  during the POLICY PERIOD; or

(2)  prior to the POLICY PERIOD and on or after the PRIOR ACTS RETROACTIVE DATE, if the INSURED had no knowledge of facts which could reasonably support a claim at the effective date of this policy.

A CLAIM is deemed made when:

(1)  a demand is communicated to the INSURED for DAMAGES or PROFESSIONAL SERVICES;

(2)  a lawsuit is served upon the INSURED seeking DAMAGES; or

(3)  an act, error or omission by any INSURED occurs which has not resulted in a demand for DAMAGES but which an INSURED knows or reasonably should know, would support such a demand.

We will not provide coverage for any CLAIM arising out of the same, related or continuing PROFESSIONAL SERVICES which resulted in a CLAIM prior to the first policy issued to the INSURED by US.

. . . .

"CLAIM(S)" means:

(1)  A demand communicated to the INSURED for DAMAGES or PROFESSIONAL SERVICES;

(2)  A lawsuit served upon the INSURED seeking DAMAGES; or

(3)  An act, error or omission by any INSURED which has not resulted in a demand for DAMAGES but which an INSURED knows or reasonably should know, would support such a demand.

. . . .

13

"POLICY PERIOD" means the period from the effective date of this policy to the expiration date or earlier termination date of this policy. POLICY PERIOD does not include any extended reporting period.

## B.

First, Baylor & Jackson avers that it timely reported the possibility of a claim to MLM. As noted above, per MLM's policy, a claim is deemed made when at least one of three circumstances occurs:

    (1)   a demand is communicated to the INSURED for DAMAGES or PROFESSIONAL SERVICES;

    (2)   a lawsuit is served upon the INSURED seeking DAMAGES; or

    (3)   an act, error or omission by any INSURED occurs which has not resulted in a demand for DAMAGES but which an INSURED knows or reasonably should know, would support such a demand.

And for a claim to qualify for coverage, it must have occurred during the policy period or within a certain time prior to the policy period, provided that the insured "had no knowledge of facts which could reasonably support a claim" at the time the policy took effect.

Because Baylor & Jackson first contracted with MLM for coverage in 2003 and then renewed its coverage each year until 2010, the operative question is whether via the Baltimore City Circuit Court's 2006 opinion granting summary judgment to Robbins, Baylor & Jackson "kn[ew] or reasonably should [have]

14

know[n]" that it had committed "an act, error or omission" that "would support . . . a demand" for damages. If the opinion provided such notice, Baylor & Jackson was obligated to report the possibility of a claim to MLM in 2006. If not, and its first notice of a potential demand for damages came in 2009, when the Court of Special Appeals affirmed the circuit court, then the contact it made with MLM in 2009 was timely.

In Maryland, an insured's obligation to notify his insurer of a potential claim "accrues when the [insured has knowledge of] circumstances . . . [that] would . . . suggest[] to a reasonable person the possibility of a claim." Commercial Union Ins. Co. v. Porter Hayden Co., 698 A.2d 1167, 1194 (Md. Ct. Spec. App. 1997). We believe that Baylor & Jackson had such knowledge when the circuit court issued its decision on August 22, 2006.

First, the specifics of opposing motions for summary judgment are outlined clearly in Maryland's Rules. Rule 2-501 states,

> A response to a written motion for summary judgment shall be in writing and shall (1) identify with particularity each material fact as to which it is contended that there is a genuine dispute and (2) as to each such fact, identify and attach the relevant portion of the specific document, discovery response, transcript of testimony (by page and line), or other statement under oath that demonstrates the dispute. A response asserting the existence of a material fact or controverting any fact contained in the record shall

15

be supported by an affidavit or other written statement under oath.

Md. R. Ct. 2-501(b). Moreover, as to affidavits, the Rules provide that they "shall be made upon personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated." Id. 2-501(c). We think it safe to assume that any reasonable lawyer practicing in Maryland has knowledge of these rules. In fact, we cannot countenance otherwise.

Assuming, then, that Baylor & Jackson was aware of these rules, we can accurately term its attempt to oppose Robbins's motion with an unexecuted affidavit as rather lax. Indeed, it should have registered no surprise when, at the motions hearing, the circuit court refused to credit the affidavit, allow Baylor & Jackson to execute it on the spot, or hear live testimony from Thomas. Of course, the events at the hearing foreshadowed the court's ultimate grant of summary judgment to Robbins, but they also highlight the role that Baylor & Jackson's failure to adequately represent Thomas played in the court's decision. If Baylor & Jackson left the hearing with any confusion as to whether its representation was acceptable, the circuit court's opinion should have provided clarity. Indeed, we think that upon receipt of the opinion, "a reasonable [lawyer]," especially

16

one who had been present at the summary judgment motion hearing, would have considered "the possibility of a [malpractice] claim." Commercial Union Ins. Co., 698 A.2d at 1194. The 2009 opinion from the Maryland Court of Special Appeals may have further solidified this possibility, but it hardly provided the first inkling that Baylor & Jackson had committed an omission that would support a demand for damages. Thus, we conclude that the district court properly held that Baylor & Jackson failed to timely notify MLM of the possibility of a claim.

Baylor & Jackson makes much of the fact that the circuit court's decision was based on "numerous alternative grounds," while the Court of Special Appeals decision "rested squarely on the alleged lack of an affidavit." It contends that "[b]ecause the Circuit Court made it clear that . . . the Thomas Defendants would have lost the case irrespective of whether Baylor & Jackson submitted an affidavit, there was no reason for the firm to expect that its clients would bring an action for malpractice." But as the district court aptly recognized, Baylor & Jackson has a misplaced focus. The issue is not whether its failure provided the only reason for the circuit court's judgment, but rather whether it provided any reason for the judgment. Obviously, it did. And because it did, we believe that Baylor & Jackson had adequate notice of the

17

possibility of a malpractice claim such that it should have

contacted MLM.

C.

Next, Baylor & Jackson avers that even if its notice was

untimely, MLM was still obligated to provide coverage because it

did not suffer actual prejudice from the untimely notice.

Baylor & Jackson correctly recognizes that Maryland law

sometimes requires insurers to demonstrate actual prejudice:

> An insurer may disclaim coverage on a liability
> insurance policy on the ground that the insured or a
> person claiming the benefits of the policy through the
> insured has breached the policy by failing to
> cooperate with the insurer or by not giving the
> insurer required notice only if the insurer
> establishes by a preponderance of the evidence that
> the lack of cooperation or notice has resulted in
> actual prejudice to the insurer.

Md. Code Ann., Ins. § 19-110. But as the district court

recognized, the circumstances under which insurers are required

to provide such demonstration depends on the language of the

policy at issue. The district court concluded that section 19-

110 is inapplicable to the policy MLM provided to Baylor &

Jackson, but we decline to reach the issue. Instead, we confine

our decision to a determination of whether MLM sufficiently

demonstrated actual prejudice. If it did, we may affirm the

district court's judgment on that basis, without determining the

applicability of section 19-110 to MLM's policy.

18

As noted above, section 19-110 requires that an insurer establish actual prejudice by a preponderance of the evidence. A preponderance of the evidence is "superior evidentiary weight that, though not sufficient to free the mind wholly from all reasonable doubt, is still sufficient to incline a fair and impartial mind to one side of the issue rather than the other." Black's Law Dictionary 1301 (9th ed. 2009). We think that MLM made such a showing.

We note first that MLM's 2006 policy states, "WE have the exclusive right to investigate, negotiate and defend CLAIMS seeking DAMAGES against the INSURED for which the policy provides coverage." Thus, MLM had not only agreed to "pay all sums up to the limit of [its] liability, which the INSURED may be legally obligated to pay," it had also obligated itself to "investigate, negotiate and defend" such claims. Thus, when Baylor & Jackson failed, upon receiving the circuit court's opinion, to notify MLM that a potential claim existed, such failure hindered MLM's ability to fulfill its contractual duties. By the time Baylor & Jackson contacted MLM, Maryland's Court of Special Appeals had already affirmed the circuit court's grant of summary judgment. At that point, MLM had few options. In its brief, MLM maintains that Baylor & Jackson's untimely notice was prejudicial because it "prevented [MLM] from advising Baylor & Jackson to file a motion for reconsideration,

19

assisting Baylor & Jackson in crafting arguments for that motion, and/or assisting in the appeal." We agree. See Prince George's Cnty. v. Local Gov't Ins. Trust, 879 A.2d 81, 97 (Md. 2005) ("The case for finding prejudice as a matter of law is strongest for primary insurers who receive notice after a judgment because the late notice deprives the primary insurers of their right to control the investigation, defense, and settlement of claims."). Contrary to the suggestion that MLM's proffer of what it could have done is "speculative" and lacking in concreteness as to allegations of "actual harm," ante, at 37, we are unsure what additional proof of actual harm MLM could offer. By the time MLM received notice of a possible claim, the harm supporting the malpractice judgment was irreversible. Thus, in spite of the allegation that "MLM had the opportunity to mitigate the potential malpractice claim before it was even filed," id., such an opportunity seems purely theoretical. MLM's real mitigation opportunity came and went during the time that Baylor & Jackson knew about the possibility of a claim and remained silent. And because Baylor & Jackson remained silent, MLM can speak only to how it could have helped. That MLM was denied its true mitigation opportunity is proof enough of actual harm. We decline to levy a more stringent requirement under these facts.Accordingly, we affirm the district court's grant of summary judgment to MLM.

20

III.

In sum, we affirm the district court's grant of summary judgment to MLM, holding that (1) Baylor & Jackson failed to provide MLM with timely notice of a potential claim and (2) MLM demonstrated actual prejudice such that if section 19-110 applies, MLM's disclaimer of coverage comported with Maryland law.

AFFIRMED

THACKER, Circuit Judge, dissenting:

The majority concludes that even if Maryland law required the insurer, Minnesota Lawyers Mutual Insurance Company ("MLM"), to demonstrate actual prejudice in order to disclaim coverage of a malpractice claim untimely noticed by Baylor & Jackson, MLM has done so such that it may properly disclaim coverage. With respect, I cannot join the majority opinion.

In my view, the district court erroneously applied Maryland law in two crucial respects. First, the district court incorrectly concluded that Maryland Code Ann., Insurance § 19-110 did not apply to require MLM to prove it was actually prejudiced by Baylor & Jackson's untimely notice. This was the central question addressed by the district court. Only in a cursory footnote did the district court predict that <u>even if</u> the statute applied to require MLM to show prejudice, it could have "easily" done so. <u>Minn. Lawyers Mut. Ins. Co. v. Baylor & Jackson, PLLC</u>, 852 F. Supp. 2d 647, 662 n.8 (D. Md. 2012). It is on this slender reed that the majority decision rests. Because I conclude that the district court erroneously interpreted Maryland insurance law, both with respect to whether the actual prejudice requirement applies and whether it was ultimately satisfied, I respectfully dissent.

22

The relevant facts are largely undisputed. In March 2006, Dawn Jackson of Baylor & Jackson initiated representation of certain defendants in a contract action in Maryland state court (the "Underlying Litigation"). When the plaintiffs in the Underlying Litigation moved for summary judgment on July 27, 2006, Baylor & Jackson responded on August 11, 2006, with unsupported allegations where disputed material facts were available and not presented and were required pursuant to the Maryland rules of civil procedure to support their position. The trial court promptly granted summary judgment against the firm's clients on August 22, 2006. See ante at 5-7. The Maryland Court of Special Appeals affirmed on July 8, 2009, relying in large part on Baylor & Jackson's conspicuous failure to present material facts sufficient to defeat summary judgment. Id. at 7 (observing that the underlying defendants' opposition to summary judgment "'was not supported by affidavits, deposition testimony, interrogatory answers, or any sworn evidence as required by Maryland Rule 2-501'" (quoting Thomas v. Robbins, No. 944, slip op. at 20-21 (Md. Ct. Spec. App. July 8, 2009) (unreported))).

On the same day the appeals court issued its decision, July 8, 2009, Baylor & Jackson notified its malpractice carrier, MLM, of the potential for a claim. The firm's former clients

23

then filed a malpractice action against the firm over a month later, on August 11, 2009. True to its word, MLM defended Baylor & Jackson for over a year, until it abruptly disclaimed coverage on October 1, 2010. At the time MLM disclaimed, mediation in the malpractice case had been scheduled just two weeks later on October 11, 2010, with trial scheduled to start December 6, 2010.

MLM filed this declaratory action on September 29, 2010, in the United States District Court for the District of Maryland. On cross motions for summary judgment, the district court granted judgment to MLM. See Minn. Lawyers Mut. Ins. Co. v. Baylor & Jackson, PLLC, 852 F. Supp. 2d 647 (D. Md. 2012). This appeal followed.

## II.

## A.

## The Untimely Notice of a Claim

As below, Baylor & Jackson vigorously disputes the date on which its malpractice claim was deemed "made" under the terms of its policy with MLM.[1] In the firm's view, the claim was

---

[1] The relevant policy language provides as follows:

A CLAIM is deemed made when:

(1) a demand is communicated to the INSURED for DAMAGES or PROFESSIONAL SERVICES;

(Continued)

not made until the Maryland appeals court issued its decision on July 8, 2009.  Using that date as a reference, its claim to the insurer would have been timely under the policy then in force. Like the district court and the majority here, I agree that a claim was "made" in this case when Baylor & Jackson filed an unsupported response to the motion for summary judgment on August 11, 2006.  See ante at 13-16.  That is, the firm "kn[ew] or reasonably should [have] know[n]" that filing a response devoid of sufficient material facts, where such facts were available, "would support" a demand for damages.  J.A. 275.  MLM suggests that Baylor & Jackson should have known on August 22, 2006, the date on which the state trial court granted summary judgment, though use of this latter date makes no difference: either way, the claim was made while the 2006 policy governed. Because I agree that the claim was made on August 11, 2006, the 2006 policy applies.

---

(2) a lawsuit is served upon the INSURED seeking DAMAGES; or

(3) an act, error or omission by any INSURED occurs which has not resulted in a demand for DAMAGES but which an INSURED knows or reasonably should know, would support such a demand.

J.A. 275.  Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

25

The 2006 policy was effective August 1, 2006, to August 1, 2007. Under the terms of the policy, a claim is covered only if made <u>and</u> <u>reported</u> during the policy period, within 60 days after the end of the policy period, or during the extended reporting period.[2] Although the claim was "made" during the period, that is, on August 11, 2006, it was not reported until July 8, 2009. Accordingly, Baylor & Jackson's notice was untimely.

B.

Maryland's Prejudice Requirement

As below, Baylor & Jackson alternatively argues that even if its notice of the claim was untimely, Maryland law requires MLM to prove it was actually prejudiced by the untimely notice before it may lawfully disclaim coverage. <u>See</u> Md. Code Ann., Ins. § 19-110. MLM responds that § 19-110 does not apply such that they need make no showing of actual prejudice in order to disclaim. Addressing this central question, the district court concluded the statute did not apply, thus relieving MLM from its need to show actual prejudice by a preponderance of the evidence. The majority assumes without deciding that the

---

[2] The policy at issue is a "claims-made"-type policy, to be distinguished from an "occurrence"-type policy. <u>See</u> <u>Sherwood</u> <u>Brands, Inc. v. Great Am. Ins. Co.</u>, 13 A.3d 1268, 1277-78 (Md. 2011) (explaining the difference between occurrence and claims-made policies).

26

statute applies because, in their view, MLM established actual prejudice in either event.  See ante at 17-18.  Because I do not agree that actual prejudice was shown, I must first determine whether the statute applies before reaching the latter question.

1.

Section 19-110: Disclaimers of Coverage on Liability Policies

Section 19-110 regulates the circumstances in which an insurer may disclaim coverage on a liability insurance policy in Maryland.  It states as follows:

> An insurer may disclaim coverage on a liability insurance policy on the ground that the insured or a person claiming the benefits of the policy through the insured has breached the policy by failing to cooperate with the insurer or by not giving the insurer required notice only if the insurer establishes by a preponderance of the evidence that the lack of cooperation or notice has resulted in actual prejudice to the insurer.

Md. Code Ann., Ins. § 19-110.  The statute was most recently interpreted in Sherwood Brands, Inc. v. Great American Insurance Co., 13 A.3d 1268 (Md. 2011).  The district court relied on Sherwood Brands and T.H.E. Insurance Co. v. P.T.P. Inc., 628 A.2d 223 (Md. 1993), in determining that the statute did not apply.  Contrary to the district court's reasoning, however, Sherwood Brands makes clear that the statute applies in this case to require MLM establish actual prejudice before it can properly disclaim coverage.

27

In Sherwood Brands, 13 A.3d at 1270, Great American had issued to Sherwood, a manufacturing company, a series of annual policies providing liability insurance. The relevant policy term was effective May 1, 2007, to May 1, 2008. Id. On December 11, 2007, a former employee filed with the Massachusetts Commission Against Discrimination a claim asserting breach of contract, wrongful termination, and many other complaints. Id. at 1272. He also filed a related complaint in Massachusetts state court on March 28, 2008, against Sherwood and its subsidiaries, asserting similar theories. Id. Both the agency proceeding and the Massachusetts state court proceeding were filed and served on Sherwood during the pendency of the 2007-08 policy. Id. Sherwood did not notify Great American of the claim until October 27, 2008, a date conceded to be after the end of the policy period. Id. at 1271-72. Great American denied coverage because the notice was untimely. Id. at 1272. During the subsequent coverage suit, the trial court granted summary judgment to Great American, concluding the untimely notice justified the disclaimer and the insurer was not required to demonstrate prejudice resulting from Sherwood's late notice. Id. at 1273-74. The Maryland Court of Appeals vacated the trial court's judgment and held that § 19-110 applied to the policy and, therefore, the insurer was

28

required to show it was actually prejudiced by Sherwood's late notice before disclaiming coverage.  <u>Id.</u> at 1270.

<u>Sherwood Brands</u> began its discussion by engaging in a historical exploration of the development of § 19-110 in Maryland.  This included several key cases and legislative amendments to the state code which shaped Maryland's notice-prejudice jurisprudence, as well as an explanation of the types of policies implicated by § 19-110.[3]  <u>See</u> <u>id.</u> at 1277-79.  Rather than simply join most jurisdictions by concluding that the prejudice requirement does not apply to "reporting-type" claims-made policies, the court recognized that Maryland's statute, § 19-110, softens the harsh result (a forfeiture) that would follow from the late notice of an insurance claim.  <u>See</u> <u>Sherwood Brands</u>, 13 A.3d at 1277 ("Although the policy may speak of the notice provision in terms of 'condition precedent,' . . . . nonetheless what is involved is a forfeiture, for the carrier seeks, on account of a breach of that provision, to deny the insured the very thing paid for. . . .  Thus viewed, it becomes unreasonable to read the provision unrealistically or to find that the carrier may forfeit the coverage, even though there is no likelihood that it was prejudiced by the breach." (internal

---

[3]  In 1996, the Legislature recodified former § 482 to Maryland Code (1997, 2006 Repl. Vol.), Insurance Article § 19–110.

29

quotation marks omitted)).  In view of these principles, the court concluded that § 19-110's prejudice requirement may apply to a reporting-type claims-made policy.[4]  See id. at 1284-85 (footnotes omitted).

Sherwood Brands turned next to the text and policies underlying § 19-110, explaining as follows:

> Section 19-110 begins by stating that "[a]n insurer may disclaim coverage . . . on the ground that the insured . . . has breached the policy . . . ." Accordingly, in order for § 19-110 to be in play, the insured must breach the insurance policy "by failing to cooperate with the insurer or by not giving the insurer required notice." See House, 315 Md. at 355, 554 A.2d at 417 (stating that, because the statute requires the insured to have "breached the policy," the statute only "potentially applies to 'any' liability insurer or policy") (emphasis in original). Central to whether § 19-110 applies to require Great American to show that it was prejudiced by Sherwood's late-delivered notice is determining whether, in giving Great American notice more than ninety days after the expiration date of the 2007-08 Policy, Sherwood "breached the policy."  If the notice provisions of the 2007-08 Policy are "conditions precedent" to coverage, then Sherwood does not "breach the policy" by failing to obey the notice provisions; the nonoccurrence of a condition precedent does not constitute a breach, it merely relieves the other party from performing under the contract/policy.  On the other hand, if the notice provisions are deemed

---

[4] This conclusion directly conflicts with the common law of many states.  See Sherwood Brands, 13 A.3d at 1282-83.  Notably, the court also explicitly acknowledged that two decisions of the United States District Court for the District of Maryland and one unpublished decision of our court erroneously applied Maryland law by concluding that reporting-type claims-made policies are not subject to the actual prejudice requirement of §19-110.  See id.  We should not compound those errors here.

covenants, Sherwood's failure to give Great American notice no later than ninety days after the expiration date of the 2007–08 Policy would constitute a "breach of the policy," such that § 19–110 would apply to require Great American to show that it was prejudiced by Sherwood's late-delivered notice.

Id. at 1286 (emphasis in original and citation omitted). The court further explained that even if the policy language expressly denotes the notice requirement as a "condition precedent" to coverage, "the purpose and effect" of § 19–110 "mandates that the notice provisions of the Policy be treated as covenants, not conditions." Id. at 1286-87.

The court concluded as follows:

We hold that § 19–110 does not apply, as was the case in T.H.E., to claims-made policies in which the act triggering coverage -- usually notice of a claim or suit being filed against and served upon an insured under third-party liability policies -- does not occur until after the expiration of the liability policy, as this non-occurrence of the condition precedent to coverage is not a "breach of the policy," as required by the statute. On the other hand, we hold that § 19–110 does apply, as is the case at present, to claims-made policies in which the act triggering coverage occurs during the policy period, but the insured does not comply strictly with the policy's notice provisions. In the latter situation, § 19–110 mandates that notice provisions be treated as covenants, such that failure to abide by them constitutes a breach of the policy sufficient for the statute to require the disclaiming insurer to prove prejudice.

Id. at 1288 (emphasis supplied). In this case, we face the latter scenario.

31

Application of § 19-110 and Sherwood Brands

In view of Sherwood Brands, the key question we must ask in order to determine if § 19-110 applies is <u>when</u> did the act triggering coverage occur?  If it occurred <u>after</u> the expiration of the liability policy, as was the case in <u>T.H.E.</u>, there is simply <u>no policy</u> which the insured can breach when it fails to notify the insurer of the claim.  Since there's no policy, there's no breach, and the express terms of § 19-110 do not apply.  On the other hand, if the act triggering coverage occurred <u>during</u> the policy term, but where the insured fails to notify the insurer according to the policy's requirements, the notice requirement is a covenant that is breached, allowing the insurer to disclaim coverage <u>only if</u> it can show actual prejudice.  In this case, we look to the policy language to determine when the act triggering coverage occurred.  The policy states:

A CLAIM is deemed made when:

(1) a demand is communicated to the INSURED for DAMAGES or PROFESSIONAL SERVICES;

(2) a lawsuit is served upon the INSURED seeking DAMAGES; or

(3) an act, error or omission by any INSURED occurs which has not resulted in a demand for DAMAGES but which an INSURED knows or reasonably should know, would support such a demand.

J.A. 275.

Neither of the first two options apply here. Instead, the act triggering coverage in this case is subsection (3). Indeed, MLM itself contends that Baylor & Jackson knew or reasonably should have known that their failure to supply evidence in opposition to a motion for summary judgment would support a demand for damages. That date, as suggested by MLM, is either the date on which Baylor & Jackson filed their summary judgment response, August 11, 2006, or when the trial court granted summary judgment, August 22, 2006. Whichever the date, both clearly fall within the policy term for the 2006 Policy, which was effective August 1, 2006, to August 1, 2007. Because the act triggering coverage in this case occurred <u>during</u> the relevant policy term, the notice provision of the policy is a covenant, not a condition precedent, and thus § 19-110 applies. See <u>Sherwood Brands</u>, 13 A.3d at 1288 ("[W]e hold that § 19–110 does apply, as is the case at present, to claims-made policies in which the act triggering coverage occurs during the policy period, but the insured does not comply strictly with the policy's notice provisions.").[5]

_____

[5] In holding otherwise, the district court simply stated that the policy at issue here is more like the one in <u>T.H.E.</u>, and emphasized the fact that the <u>policy language</u> in this case makes the notice requirement a condition for coverage. But as <u>Sherwood Brands</u> makes clear, Maryland law does not care how the
(Continued)

MLM must therefore establish it was actually prejudiced by the untimely notice in order to properly disclaim coverage.

3.

Proof of Actual Prejudice

a.

Burden on the Insurer

MLM has not demonstrated actual prejudice by a preponderance of the evidence as required by § 19-110, offering only speculation as to what it would have done had notice been timely.

"The insurer bears the burden of proof to show prejudice." Prince George's Cnty v. Local Gov't Ins. Trust, 879 A.2d 81, 97 (Md. 2005) (citing Md. Code Ann., Ins. § 19-110 (insurer must establish actual prejudice "by a preponderance of the evidence")); Sherwood Brands, Inc. v. Hartford Acc. and Indem. Co., 698 A.2d 1078, 1083 (Md. 1997) (under § 19-110, "the

---

notice provision is couched when determining whether the provision is a covenant or condition precedent; what matters is when the act triggering coverage occurred. If the act triggering coverage (i.e., when the claim is "made") occurred during the policy period, the statutory prejudice requirement applies. If the act triggering coverage falls outside of the policy term, the prejudice requirement does not apply because there was never a policy to be breached. The district court did not address this pivotal distinction.

insurer must establish by a preponderance of affirmative evidence that the delay in giving notice has resulted in actual prejudice to the insurer" (emphasis supplied)).

b.

More Than Mere Speculation Necessary

Critically, § 19-110 requires an insurer to prove that it suffered actual harm: "The requirement of 'actual prejudice' means that an insurer may not disclaim coverage on the basis of prejudice that is only possible, theoretical, conjectural, or hypothetical." Gen. Acc. Ins. Co. v. Scott, 669 A.2d 773, 779 (Md. 1996). "Nor is it enough to surmise harm that may have occurred by virtue of the passage of time; prejudice cannot be presumed from the length of the delay." Id. An insurer may properly disclaim coverage on the basis of untimely notice only if it can prove that -- as a matter of fact -- it actually suffered prejudice in its ability to investigate, settle, or defend the claim. See Sherwood Brands, 13 A.3d at 1287.

Naturally, the potential for prejudice due to late notice is greatest where "the insurer has been deprived of all opportunity to defend" the claim made against the insured. Prince George's Cnty, 879 A.2d at 98 (internal quotation marks omitted). In fact, Maryland's highest court has concluded that an insurer is prejudiced as a matter of law when the insured fails to notify the insurer of the incident, claim, and lawsuit

35

until _after_ an adverse judgment has been entered against the insured.  See _id._ at 100.  Indeed, the majority quotes _Prince George's County_ for this principle, stating "'The case for finding prejudice as a matter of law is strongest for primary insurers who receive notice after a judgment because the late notice deprives the primary insurers of their right to control the investigation, defense, and settlement of claims.'"  _Ante_ at 19 (quoting _Prince George's Cnty_, 879 A.2d at 97).  True enough.  However, the proposition does not support the majority's conclusion in view of the facts of this case.

In _Prince George's County_, the Maryland court was speaking to the malpractice judgment entered _against the insured_ -- not about underlying conduct by the insured giving rise to the lawsuit against it.  Indeed, in this case, the insured notified MLM several weeks _before_ it was sued by its former clients.  This is not the case of an insured who failed to notify its insurer until after a malpractice judgment is entered against it (the insured).

c.

Actual Harm

Regardless, as Maryland case law articulates, prejudice is all about harm to the insurer.  See _Prince George's Cnty_, 879 A.2d at 95 ("If the insured violates the notice provision without harming the interests of the insurer -- i.e.

36

without prejudice -- then there is no reason to deny coverage."). Thus, the question is not how MLM could have helped Baylor & Jackson had notice been timely, but how was MLM actually harmed by its inability to do so as a result of the untimely notice.

In my view, MLM has not established by a preponderance of the evidence that it was actually harmed by Baylor & Jackson's untimely notice. The 2006 Policy term was in force August 1, 2006, to August 1, 2007, and included an additional 60-day extension period. The date on which the insured reported the "claim" to the insurer was August 11, 2009, the same day the appeals court decision affirmed the summary judgment granted against the firm's clients. Thus, MLM knew as of that date that a malpractice suit against Baylor & Jackson might be forthcoming. Indeed, once the suit was brought, MLM provided a defense to Baylor & Jackson for more than a year before disclaiming coverage. This denial of coverage took place just weeks before a scheduled mediation conference on October 11, 2010, and only three months before trial. It is telling that there is no suggestion from MLM that it disclaimed coverage at that time because they found themselves somehow harmed by the

37

late notice.[6]  MLM simply asserted (at the time) that it was disclaiming pursuant to the terms of the Policy requiring timely notice.  See J.A. 339.

MLM's only argument on this issue does not address the harm or prejudice to itself, but only to how it might have assisted Baylor & Jackson had notice been timely, namely, that MLM was unable to assist the firm in possible "mitigation and remediation efforts."  Appellee's Br. 38.  Attempting to flesh this out, MLM asserts, "[h]ad Baylor & Jackson given timely notice of the malpractice to MLM, MLM could have advised Baylor & Jackson to admit fault [in a motion for reconsideration], argue that the error was through no fault of Baylor & Jackson's clients, and argue that Baylor & Jackson's error did not prejudice the opposing side."  Id. at 38-39 (emphasis supplied). MLM suggests, "[s]uch an argument that an attorney's conduct constitutes excusable neglect has persuaded previous courts to forgive the mistake and permit a refiling," but notably cites to no cases and makes no mention of its own actual injury.  J.A. 70.  This contention is speculation at best and again does not address the issue of actual harm caused to MLM by the late

_____

[6] See Sherwood Brands, Inc. v. Hartford Acc. and Indem. Co., 698 A.2d 1078, 1083 (Md. 1997) (observing that delay in giving notice apparently played no material role in insurer's decision not to defend where insurer did not raise prospect of prejudice until coverage suit).

notice. MLM has offered no other grounds for its contention that it suffered actual prejudice.

The district court accepted the insurer's argument in a footnote, stating,

> Even if MLM were required to show prejudice, it could have easily done so by showing it had been excluded from the post-summary-judgment and appellate proceedings in the Robbins v. Thomas case; those were the only opportunities MLM could have had to fashion a request for relief. Whether it would have been successful with such a request is immaterial to the prejudice flowing from the lack of notice that would have enabled it to participate meaningfully in the litigation.

Minn. Lawyers Mut. Ins. Co. v. Baylor & Jackson, PLLC, 852 F. Supp. 2d 647, 662 n.8 (D. Md. 2012). I am not as easily persuaded as the district court, for I do not see how the above possibilities establish actual harm as a matter of fact by a preponderance of the evidence. The suppositions proffered by the district court, even if reasonable, are still speculative, and do not speak to any harm MLM actually suffered.

The majority reasons that Baylor & Jackson's late notice "hindered MLM's ability to fulfill its contractual duties," observing that by the time the appeals court issued its opinion, "MLM had few options" by the time it received notice. Ante at 18. To the contrary, MLM had the opportunity to mitigate the potential malpractice claim before it was even filed, as it received notice of a possible claim over a month

before litigation commenced. And even thereafter, MLM defended the case for over a year before abruptly disclaiming coverage just as the pretrial practice reached its zenith. Even giving MLM the benefit of the doubt, it is far from clear that the untimely notice left them with "few options." Id.

Instead, the majority rests its analysis on MLM's mere assertion that the untimely notice "'prevented [MLM] from advising Baylor & Jackson to file a motion for reconsideration, assisting Baylor & Jackson in crafting arguments for that motion, and/or assisting in the appeal.'" Id. (quoting Appellee's Br. 38). But as explained above, even if we assume MLM knew of the malpractice immediately, advised the firm to file the motion for reconsideration, and otherwise assisted in the appeal, MLM has presented no facts showing how it was actually harmed by its inability to take these discreet steps.

The speculative nature of MLM's claims of prejudice stands in stark contrast to those Maryland cases where an insured notified its insurer of a claim so late that it had little or no opportunity to participate in or otherwise influence the litigation against the insured. See Prince George's Cnty., 879 A.2d at 100 (insurer actually prejudiced where insured "failed to notify insurer of the incident, claim, and lawsuit until after an adverse judgment was entered" against the insured); see id. at 94-96 (citing cases).

40

But even in a case far closer than presented by this appeal, a Maryland appeals court did not find actual prejudice. In General Accident Insurance Co. v. Scott, 669 A.2d 773, 775–77 (Md. Ct. Spec. App. 1996), cert. denied, 673 A.2d 707 (Md. 1996), the insured did not notify the insurer of a claim until 29 months after the accident giving rise to the claim. The insurer contended that it was prejudiced by the delay because it could not fully investigate the underlying facts, evaluate its potential exposure, participate in the decision as to whether to submit the case to arbitration, and decide whether to set high/low parameters. Id. at 779. The Maryland Court of Special Appeals concluded that the insurer's allegations were insufficient to show that it suffered actual prejudice because "conclusory allegations about difficulties and inconveniences that would result from any delay in notification are not sufficient" to create a material dispute of fact with respect to the issue of prejudice. Id. (emphasis in original). I submit that the case before us presents far fewer persuasive claims of prejudice than in Scott, a case where no actual prejudice was found to have even been alleged, much less proven to a preponderance of the evidence.

Had MLM been actually prejudiced by the late notice, I would have expected it to have presented facts before the

district court indicating as much. It did not there and has not here.

Perhaps recognizing that it failed to prove actual prejudice, MLM asks us, alternatively (and tellingly), to remand the case to give it another chance. See Appellee's Br. 37 ("If this Court, however, determines that Section 19-110 does apply to the Policy, it should remand this case to the District Court for a determination as to whether MLM has established actual prejudice. While the District Court noted in a footnote that MLM would easily be able to show actual prejudice, it did not actually reach that issue and it did not make a full factual finding in its Opinion." (emphasis supplied)). This argument leaves the distinct impression that MLM is well-aware of the absence of actual prejudice.[7]

### III.

At bottom, the purpose of a notice requirement in an insurance policy is to protect the insurer "by affording the insurer the opportunity to acquire full information about the circumstances of the case, assess its rights and liabilities, and take early control of the proceedings." Prince George's

---

[7] MLM has not articulated any sound basis for remand. It filed this action for a declaratory judgment and has the burden of proof. MLM has simply failed to present any facts to satisfy its burden.

42

Cnty, 879 A.2d at 95.  But under Maryland law, if the insurer is not actually harmed by the untimely notice, "then there is no reason to deny coverage."  Id.  The notice clause should not be used by the insurer as a "technical escape-hatch by which to deny coverage in the absence of prejudice."  Id. (internal quotation marks and citation omitted).  MLM should not be allowed to so easily subvert the public policy embodied in Maryland's considered legislative judgment without showing how it was actually harmed by the untimely notice.  As a result, I would reverse the judgment of the district court.